IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE,
AT WINCHESTER

JAY WOOTEN,

    *Plaintiff*

v.

JIMMY COLEMAN,      **4:20-cv-3**
KANNESHA NEPT,
ROCKY RUEHLING,      JURY DEMAND
MICHAEL SHARP,
KELLIE FOGUS,     and

CITY OF TULLAHOMA, TENNESSEE,

    *Defendants*

_____

## COMPLAINT
_____

The Plaintiff, Jay Wooten, files suit against the Defendants as follows:

## INTRODUCTION

1)    This lawsuit is about a series of illegal acts, including but not limited to excessive force, carried out by the Tullahoma Police Department against the Plaintiff.

## THE PARTIES

2)    The Plaintiff, JAY WOOTEN, is a homeowner and citizen of Tullahoma, Tennessee.

3)    The CITY OF TULLAHOMA, TENNESSEE, is a municipality within Coffee and

1

Franklin Counties in Tennessee, and it is a political subdivision of the State of Tennessee. Among other functions, it oversees the Tullahoma Police Department. The municipality is named as a Defendant.

4) Defendants JIMMY COLEMAN, KANNESHA NEPT, ROCKY RUEHLING, MICHAEL SHARP, and KELLIE FOGUS, during the events in question were officers of the Tullahoma Police Department. They are being sued individually.

## FACTUAL BACKGROUND

### *First Incident — January 26, 2019*

5) On January 26, 2019, Plaintiff WOOTEN was inside his home when Officers JIMMY COLEMAN, KANNESHA NEPT, and ROCKY RUEHLING came to his home, apparently based on allegations by the Plaintiff's mentally ill brother that the Plaintiff had committed some sort of assault against the Plaintiff's wife. [1]

6) Foolishly, WOOTEN allowed Officer ROCKY RUEHLING into his home through the front door, and tried to cooperate. The two men began speaking peacefully.

7) While this peaceful interview was in progress, Officers KANNESHA NEPT and JIMMY COLEMAN knocked loudly on the *back* door. Then they barged in uninvited.

8) As Plaintiff WOOTEN turned to look at these two intruders, RUEHLING grabbed him forcefully by the shoulder, and violently pulled him back.

9) Officer KENESHA NEPT then came inside and threw WOOTEN onto the couch.

---

1 Although this case is being filed on a January 27, 2020, it is still timely because that date is a Monday. *See* Tenn. Code Ann. § 1-3-102 (state law); *see also* Fed. R. Civ. P. 6; *Bartlik v. U.S. Dept. of Labor,* 62 F.3d 163 (6th Cir. 1995) (federal law).

2

10) Immediately as he landed on the couch, all three officers began barking commands at WOOTEN, some of which were contradictory.

11) Confused and perplexed, WOOTEN held up his phone and told the officers, "I think I need to be recording this."

12) In order to prevent WOOTEN from recording these government agents, Defendant KANNESHA NEPT assaulted him by striking his hand, making him drop the phone.

13) Officer NEPT then grabbed WOOTEN unprovoked, lifted him off the couch, and pushed him up against a corner of the room. All three Officers immediately stood around him, cornering him. They continued speaking to him in a hostile manner.

14) Some moments later, Officer NEPT stepped back and drew her firearm, unprovoked, pointing it at WOOTEN. He was still trapped against the wall.

15) As she threatened the Plaintiff with her gun, she spoke to Officer COLEMAN. She said, "Deploy the taser."

16) COLEMAN drew a taser, pointed it at WOOTEN's groin area from about two feet away, and shot him in the testicles. The Plaintiff collapsed.

17) All three officers jumped on top of him, roughed him up some more, and handcuffed him.

18) When he had recovered from the taser, Plaintiff WOOTEN asked the female officer (i.e., NEPT) for her name. She answered, "Your worst nightmare."

19) At this point, Defendant ROCKY RUEHLING took him to jail on a false allegation that he had somehow resisted arrest.

3

20) WOOTEN had to spend an hour or two in jail, prior to making bond on this charge.

21) The case was ultimately dismissed after the prosecutor learned that the charge was false.

22) At some point during the encounter while the police were inside the house, the Plaintiff's wife expressly told them that she was never assaulted (i.e., the original reason for their showing up at the house). Regardless, the Plaintiff was only charged with Resisting Arrest from the incident, not with assaulting her.

23) During the incident, Defendants COLEMAN, NEPT, and RUEHLING were acting under color of law, namely as law enforcement officers.

*Second Incident — August 28, 2019*

24) On June 25, 2019, Plaintiff WOOTEN filed a grievance with the Tullahoma Police Department about the previous incident.

25) On information and belief, no officers were ever disciplined as a result.

26) Regardless, on August 28, 2019, Officer MICHAEL SHARP seized Plaintiff WOOTEN for a purported traffic violation. He seized him at a time when WOOTEN was not even driving. Instead, the officer just claimed that he had observed WOOTEN driving several blocks earlier, with defective lighting equipment.

27) In reality, none of the lights on the vehicle was out, as alleged.

28) Regardless, SHARP held the Plaintiff hostage during the traffic stop, ultimately

4

calling in multiple Tullahoma officers for backup, and attempting to find grounds to search the car.

29) Ultimately, SHARP gave WOOTEN a traffic ticket for a defective light.

30) During this incident, Officer SHARP was acting under color of law as a law enforcement officer.

31) On information and belief, this officer was seizing WOOTEN and falsely charging him in order to retaliate for the complaint that he had filed against the other officers.

32) At the traffic court date, the traffic ticket was later dismissed because the charge was false.

33) Plaintiff WOOTEN verbally complained about this incident to the interim Chief of Police. In response, the interim Chief acknowledged that the dashboard video showed that all the lights were indeed functional.

34) Regardless, on information and belief, the accusing officer was never disciplined.

### *Third Incident — November 28, 2019*

35) On November 28, 2019, Officers KELLIE FOGUS and JIMMY COLEMAN came to WOOTEN's house, apparently on suspicion that another individual named Forrest Powers (a person who had a misdemeanor warrant outstanding) may be at the property. These officers did not have any search warrant for the residence.

36) Plaintiff WOOTEN told the officers that the subject in question had indeed visited the property earlier on that date, in order to eat Thanksgiving dinner, but that he had since left.

5

37) Without a warrant or exigency, Officer FOGUS intruded into the enclosed, private back yard and violently threw a male guest of WOOTEN against the wall.

38) Next, she went to the back door and attempted to forcefully open it, kicking the door into WOOTEN's wife and injuring her.

39) Officer FOGUS was acting under color of law as a law enforcement officer.

40) This time, COLEMAN stayed away from the house while WOOTEN basically just yelled at him for having tased him previously. He told the officer that he was about to be sued. The officer denied being the one to fire the taser.

41) Following this Thanksgiving incident, Plaintiff WOOTEN filed a written grievance about this latest incident with the Tullahoma Police Department.

42) On information and belief, Officer FOGUS was not disciplined as a result.

### *General Allegations*

43) All the wrongful acts listed in this complaint were committed intentionally or recklessly, justifying punitive damages against the individual officers.

44) As a result of these hostile contacts with the Tullahoma Police Department, Plaintiff WOOTEN has experienced pain, suffering, emotional distress, loss of enjoyment of life, and lost earning capacity, and he has incurred legal, bond, and medical fees.

### *Other Facts Suggesting Improper Supervision by the City of Tullahoma*

45) On April 22, 2017, a Tullahoma police officer arrested a fifty-two-year-old woman named Deborah Rosetti without probable cause. After handcuffing her, he forcefully

jerked her hands upward from behind, unprovoked, in such a way that one of her arms suffered nerve damage and paralysis. The woman complained to the Police Department, and later sued. The officer was never disciplined.

46) On December 17, 2017, another Tullahoma police officer shot a man named William Moon four times during an arrest. Although the officer claimed that he only shot Moon because Moon supposedly drew a gun, multiple other eyewitnesses in the immediate vicinity (including a second police officer) reported that they never saw Moon draw a gun. Also, although the officer had a warrant to arrest this suspect, he carried out the arrest and the shooting by intruding on the curtilage of a third-party residence (where Moon was visiting), in clear violation of the rights of that third party. Despite these circumstances, the shooter was never disciplined.

47) On March 16, 2018, Officer JIMMY COLEMAN tased an autistic man named James Shelton because the man walked away from the officer rather than submit to a voluntary interview. After the man was tased, COLEMAN allowed him to walk inside his home without any hot pursuit. Later, when other Tullahoma officers arrived, they surrounded the house and shot the unarmed man inside his own home, unprovoked, on the basis that he did not obey their commands to lie on the ground for a routine, warrantless arrest in his home. Then, at the same time as the second officer shot him, a third officer tased him a second time. These officers effectively admitted to these facts, but they were not disciplined.

48) On June 06, 2018, Officer ROCKY RUEHLING assaulted a 54-year-old woman named Michelle Keller by tackling her to the ground unprovoked, by putting her handcuffs on too tight, and then by jerking her handcuffs in a rough manner, all while arresting her without probable cause. RUEHLING charged her with Resisting Arrest and Disorderly Conduct, but the

prosecutor later dismissed the charges voluntarily. The Tullahoma Police Department investigated the incident, and condoned the acts of RUEHLING.

49) On April 22, 2019, the Tullahoma Police Chief (the man in charge during the first incident against this present Plaintiff) was convicted of Tampering with Evidence. He apparently committed the crime in order to protect his son during an investigation in November 2018.

50) On information and belief, none of the officers in this present case was disciplined, despite Plaintiff WOOTEN's express complaints about the violations of his rights.

## CLAIMS FOR RELIEF

### COUNT I
### UNREASONABLE SEIZURE
### 42 U.S.C. § 1983

*(Coleman, Nept, Ruehling, and City of Tullahoma)*

51) The other sections are incorporated by reference.

52) On January 26, 2019, by forcefully detaining the Plaintiff inside his home without probable cause, Defendants JIMMY COLEMAN, KANNESHA NEPT, and ROCKY RUEHLING violated the Fourth Amendment under color of law.

53) On January 26, 2019, by using more force than was reasonable against the Plaintiff, Defendants COLEMAN, NEPT, and RUEHLING violated the Fourth Amendment under color of law.

54) On January 26, 2019, by taking the Plaintiff to jail and fabricating probable cause to believe that he had resisted arrest, Defendant RUEHLING violated the Fourth Amendment under color of law.

8

55) The CITY OF TULLAHOMA, TENNESSEE is also liable for the misconduct of these officers because it fails to train and/or supervise its officers, in deliberate indifference to the constitutional rights of the citizenry.

## COUNT II
## RETALIATION AGAINST PROTECTED SPEECH
## 42 U.S.C. § 1983

*(Coleman, Nept, Ruehling, and City of Tullahoma)*

56) The other sections are incorporated by reference.

57) By smacking the video recording device out of the Plaintiff's hand and then punishing him for his exercise of the freedom of speech and of the press — most notably, punishing by tasing him in the testicles — Defendants JIMMY COLEMAN, KANNESHA NEPT, and ROCKY RUEHLING violated the First Amendment under color of law.

58) The CITY OF TULLAHOMA, TENNESSEE is also liable for the misconduct of these officers because it fails to train and/or supervise its officers, in deliberate indifference to the constitutional rights of the citizenry.

## COUNT III
## UNREASONABLE SEIZURE
## 42 U.S.C. § 1983

*(Sharp and City of Tullahoma)*

59) The other sections are incorporated by reference.

60) On August 28, 2019, by seizing the Plaintiff at a traffic stop without probable

9

cause or reasonable suspicion, and also by extending the traffic stop without probable cause or reasonable suspicion, Defendant Sharp violated the Fourth Amendment under color of law.

61) The CITY OF TULLAHOMA, TENNESSEE is also liable for the misconduct of the officer because it fails to train and/or supervise its officers, in deliberate indifference to the constitutional rights of the citizenry.

## COUNT IV
## RETALIATION AGAINST PROTECTED SPEECH
## 42 U.S.C. § 1983

*(Sharp and City of Tullahoma)*

62) The other sections are incorporated by reference.

63) On August 28, 2019, by seizing the Plaintiff and falsely charging him with a traffic crime in retaliation for the complaint about the misconduct of the other Tullahoma officers, Defendant MICHAEL SHARP violated the First Amendment under color of law.

64) The CITY OF TULLAHOMA, TENNESSEE is also liable for the misconduct of the officer because it fails to train and/or supervise its officers, in deliberate indifference to the constitutional rights of the citizenry.

## COUNT V
## MALICIOUS PROSECUTION
## Tennessee Common Law

*(Sharp)*

65) The other sections are incorporated by reference.

66) On August 28, 2019, by maliciously instituting the traffic charge against the

Plaintiff without probable cause, which was later dismissed involuntarily in the Plaintiff's favor, Defendant MICHAEL SHARP committed the common-law tort of malicious prosecution.

## COUNT VI
## WARRANTLESS ENTRY
## 42 U.S.C. § 1983

### *(Fogus and City of Tullahoma)*

67) The other sections are incorporated by reference.

68) On November 28, 2019, by intruding into the curtilage of the Plaintiff's home without a warrant or any other valid justification, and then roughing up the Plaintiff's guest and the Plaintiff's wife, Officer KELLIE FOGUS violated the Fourth Amendment under color of law.

69) The CITY OF TULLAHOMA, TENNESSEE is also liable for the misconduct of the officer because it fails to train and/or supervise its officers, in deliberate indifference to the constitutional rights of the citizenry.

## JURISDICTION

70) The District Court has subject-matter jurisdiction because most of the claims present federal questions under 42 U.S.C. § 1983, and the state-law claim (based on one of the same occurrences) falls under the Court's supplemental jurisdiction.

71) Personal jurisdiction is proper because the Defendants are all citizens of Tennessee, where this Court is based, or else there are sufficient minimum contacts with this state that traditional notions of fair play allow for litigation here.

11

72) Venue is proper in the Eastern District of Tennessee (Winchester Division), because the case happened here.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jay Wooten asks for the following:

i) A jury trial,

ii) Nominal/compensatory damages of $1,000,000,

iii) Punitive damages in a reasonable, additional amount set by the jury (but not to be assessed against the City of Tullahoma, which is immune to such damages),

iv) Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988,

v) Taxing of costs to the defendants, and

vi) Any other relief that the Court deems appropriate.

Respectfully submitted,

/s/ Drew Justice
Drew Justice #29247
Attorney for Jay Wooten
1902 Cypress Drive
Murfreesboro, TN 37130
(615) 419-4994
drew@justicelawoffice.com

12